**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| VIOLA J. ROSSER,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:15-cv-00356-MKD<br><br>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 19. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 17) be granted and Defendant's Motion (ECF No. 19) be denied.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

1  party appealing the ALJ's decision generally bears the burden of establishing that

2  it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

1  numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,
2  700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on September 21, 2012, Tr. 156-57, alleging a disability onset date of September 30, 2009. Tr. 156. The application was denied initially, Tr. 109-15, and on reconsideration, Tr. 117-21. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on April 10, 2014. Tr. 41-71. On May 2, 2014, the ALJ denied Plaintiff's claim. Tr. 15-34.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 2009, the alleged onset date. Tr. 20. At step two, the ALJ found Plaintiff has the following severe impairments: lumbar degenerative disc disease; impaired balance; asthma; cognitive/learning disorder; depressive disorder; post-traumatic stress disorder; obesity; visual impairment; hearing impairment. Tr. 20. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 21. The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following non-exertional limitations:

> [T]he claimant can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, stand or walk for about 6 hours in an 8 hour day, and sit for about 6 hours in an 8 hour day. The claimant can push or pull within her lifting limitations, and can occasionally climb ramps and stairs. The

claimant can occasionally stoop, crouch, kneel, crawl, and balance, but can never climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., wetness, and hazards such as machinery and heights. The claimant can understand, remember, and carry out simple routine repetitive tasks, and can tolerate no more than occasional decision-making or changes in the work setting. The claimant requires additional time to learn new procedures and processes and adjust to changes. The claimant would learn best by oral instructions and with a hands-on demonstration. The claimant can tolerate moderate noise levels and can perform jobs requiring no more than occasional near and far acuity. The claimant cannot tolerate fast-paced production requirements, but can perform and persist at simple routine repetitive tasks at production pace. The claimant can tolerate superficial interactions with coworkers, supervisors, and the general public.

Tr. 24.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 29. At step five, the ALJ founds that given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform, such as mail clerk and housekeeper cleaner. Tr. 29-30. On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 30.

On November 17, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUE

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II of the Social Security Act. ECF No. 17. Plaintiff raises the following issue for this Court's review: whether the ALJ properly determined at step three that Plaintiff did not meet or equal Listing 12.05. ECF No. 17 at 2.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly finding that Plaintiff did not meet the requirements of Listing 12.05—Intellectual Disability. ECF No. 17 at 8-12.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 404.1525(d). The claimant bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). If a claimant meets the

listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii).

**A. Listing 12.05—Intellectual Disorder**

In the introductory paragraph to Listing 12.05, intellectual disability is defined as "significantly subaverage general intellectual function with deficits in adaptive function initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404. Subpt. P, App. 1.  To satisfy the criteria for intellectual disabilities under Listing 12.05B, a claimant must demonstrate (1) deficits in adaptive functioning which manifested prior to age 22; and (2) a valid verbal, performance, or full scale IQ of 59 or less.  20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.05(B).  To satisfy Listing 12.05C, a claimant must demonstrate (1) deficits in adaptive functioning which manifested prior to age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.05(C).

The ALJ found that Plaintiff did not meet either Listing 12.05B or 12.05C because Plaintiff's medical record does not include any valid IQ testing.  Tr. 23-24. Plaintiff contends that the ALJ's analysis of Listing 12.05 was deficient in two ways.  First, Plaintiff argues that the ALJ failed to follow his duty to develop the

record and obtain IQ testing before evaluating whether Plaintiff satisfied the requirements of paragraphs B or C of Listing 12.05. ECF No. 15 at 9-11. Second, Plaintiff argues that the ALJ failed to analyze whether Plaintiff met the criteria for the introductory paragraph of Listing 12.05, specifically whether Plaintiff had deficits in adaptive functioning manifested before age 22. ECF No. 15 at 8-9.

*1. Duty to Develop the Record*

In Social Security cases, the ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further. *See Tonapetyan*, 242 F.3d at 1150. By contrast, where the record, taken as a whole, is adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not implicated. *See, e.g.*, *Mayes*, 276 F.3d at 460.

Here, the ALJ found that Plaintiff has the severe impairment of cognitive/learning disorder. Tr. 20. In step three, the ALJ considered whether

1  Plaintiff met the criteria for Listing 12.05.  Tr. 23-24.  In this analysis, the ALJ
2  focused almost exclusively on the aspects of Listing 12.05 that overlap with the
3  Paragraph B criteria identified in Listings 12.04 and 12.06.  Tr. 21-23.  The ALJ
4  did not specifically address the introductory paragraph of Listing 12.05 and found
5  that Plaintiff did not meet 12.05B or 12.05C because she had not undergone IQ
6  testing.  Tr. 23.

7  Ninth Circuit precedent is instructive here.  *See Garcia v. Comm'r of Soc.*
8  *Sec. Admin.*, 768 F.3d 925 (9th Cir. 2014).  In *Garcia*, the ALJ found that one of
9  the claimant's severe impairments was "borderline intellectual functioning[.]" *Id.*
10 at 99.  The ALJ found the claimant was not disabled under Listing 12.05 by relying
11 on a performance IQ score of 77 in the medical record.  *Id.* at 929.  However, the
12 claimant did not have a valid verbal or full-scale IQ score because she was unable
13 to finish testing due to time constraints.  *Id.* at 927.  The Ninth Circuit found that
14 the ALJ erred by relying on the performance IQ score because Listing 12.05
15 instructs "[i]n cases where more than one IQ is customarily derived from the test
16 administered, *e.g.*, where verbal, performance, and full scale IQs are provided in
17 the Wechsler series, we use the lowest of these in conjunction with Listing 12.05."
18 *Id.* at 931-32.  The Ninth Circuit also noted that "IQ testing plays a particularly
19 important role in assessing the existence of intellectual disability." *Id.* at 931.
20 Thus, the Ninth Circuit held that a complete set of valid IQ scores are an essential

part of a " 'fully and fairly develop[ed]' record" when a case turns on the question of whether a claimant has an intellectual disability. *Id.* at 930 (internal citations omitted).[1]

---

[1] Relying on *Garcia*, district courts have found that the ALJ's duty to develop the record is triggered when evaluating Listing 12.05 under similar circumstances as presented in this case. *See, e.g., Narron v. Colvin,* 2015 WL 4663388, at *5 (D. Or. 2015) ("Because the only remaining basis for the ALJ's conclusion that [claimant] did not satisfy the requirements of Listing 12.05C is the lack of an IQ score for [claimant], rendering the IQ score potentially dispositive, and because there is evidence in the record that suggests [claimant] has mental impairments, the record is not fully and fairly developed without an valid IQ score." (internal citations omitted)); *Reed v. Berryhill,* 2017 WL 684154, at *3-4 (W.D. Wash. 2017)("As the ALJ recognized Listing 12.05 would be applicable to this case, the absence of IQ scores in the record triggered the ALJ's duty to develop the record and obtain IQ testing before evaluating the Listing 12.05 criteria."); *Zauss v. Colvin,* 2016 WL 4500797, at *6-7 (C.D. Cal. 2016) (holding that the ALJ failed to fully develop the record by not ordering necessary cognitive examinations even though the Plaintiff bears the burden at step three); *see also Parrott v. Colvin,* 2016 WL 1230807, at *3 (W.D. Wash. 2016) ("Because the record as currently

Here, the ALJ found Plaintiff had the severe impairment of cognitive/learning disorder. Tr. 20. Rachel McDougall, a clinical psychologist, evaluated Plaintiff and opined that she had "a longstanding history of cognitive impairment and learning difficulties affecting her social and occupational functioning." Tr. 393. Dr. McDougall recommended a "complex evaluation including intelligence testing, memory testing, and aptitude testing is necessary in order to establish a current baseline of cognitive functioning." Tr. 393. Plaintiff's counsel raised Dr. McDougall's recommendation and requested IQ testing in the pre-hearing briefing and again at the hearing. Tr. 70.

Defendant contends that the ALJ properly afforded Dr. McDougall's opinion little weight and therefore it did not trigger a duty to develop the record. ECF No. 19 at 5. Defendant is correct that the ALJ afforded Dr. McDougall's opinion little weight, Tr. 28, and that the Plaintiff did not challenge this finding. S*ee* ECF No. 17. Despite dismissing Dr. McDougall's opinion, the ALJ found that cognitive/learning disorder was one of Plaintiff's severe impairments. Tr. 20. It is clear from the record that the ALJ credited Dr. McDougall's opinion to some

---

constituted is ambiguous as to Plaintiff's adult IQ score, the proper remedy in this case is a remand for further development of the record."); *Lyghts v. Colvin*, 2013 WL 5701417, at *4-6 (E.D. Wash. 2013).

extent because at the hearing, the ALJ acknowledged that Dr. McDougall's opinion helped form the basis of the step two finding of a cognitive/learning severe impairment. Tr. 70 ("I do recognize that she was in special ed classes in school and I do also recognize that at the very least there were some concerns by Dr. McDougall and others, some references to mild mental retardation. I do not have any test scores whatsoever that would show that or school records that would show that. But certainly I think everybody would agree that we have cognitive and learning issues that she has had to work with and around[.]").[2]

Plaintiff also presented evidence that she was in special education classes from age 12 through high school. Tr. 60, 389. She did not graduate from high school until age 21. Tr. 388. In school and after, she struggled with reading, reading comprehension, and math. Tr. 389. She reported that her high school wanted her to undergo cognitive testing, but her mother refused to permit it. Tr. 390. The Court recognizes that an ALJ is not required to order IQ testing every time a Plaintiff is evaluated under Listing 12.05. *See, e.g., Alvarado v. Asture,* 2008 WL 3288076, at *7 (E.D. Wash. 2008) (finding no error at step three for

---

[2] Only one other provider in the record, Ms. Field, opined that Plaintiff had a cognitive disorder. Tr. 26-27. Ms. Field diagnosed "mental retardation," Tr. 27 (citing Tr. 506).

failing to order IQ testing before finding Plaintiff did not meeting Listing 12.05C because the physician that assessed probable borderline intellectual function also opined Plaintiff suffered no psychological barriers to employment). Here, however, the ALJ's finding of a severe impairment, Dr. McDougall's evaluation and recommendation of additional testing, coupled with the independent evidence of Plaintiff's cognitive disabilities, triggered the duty to order IQ testing.

This error cannot be considered harmless. *See Molina*, 674 F.3d at 1115 (an error is harmless only when it is "inconsequential to the [ALJ's] ultimate nondisability determination"). Despite finding a severe cognitive/learning disorder impairment, the ALJ found Plaintiff was not disabled under Listing 12.05 because she did not have qualifying IQ scores in her medical record. Tr. 23-24. Here, an IQ test would be dispositive of the issue.

2. *Introductory Paragraph of 12.05*

Plaintiff also argues that the ALJ failed to discuss whether Plaintiff satisfied the criteria enumerated in the introductory paragraph of Listing 12.05. ECF No. 17 at 8-9. Plaintiff presented evidence that she was in special education classes in high school. Tr. 60. Although she graduated from high school, she did so at age 21. Tr. 388. She indicated that her high school wanted her to undergo cognitive testing, but her mother refused. Tr. 390. This type of evidence potentially supports that Plaintiff had "deficits in adaptive function [which] initially

manifested during [Plaintiff's] developmental period." 20 C.F.R. § pt. 404, subpt. P, app. 1 (2016).  In failing to evaluate if Plaintiff met the criteria of the introductory language, the ALJ erred.  Upon remand, the ALJ is directed to make a finding whether Plaintiff satisfies the introductory language of Listing 12.05.

**B. Remedy**

Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Plaintiff's requested remedy is remand for further proceedings.  ECF No. 17 at 2.  Specifically, she requests a *de novo* hearing, a complex psychological evaluation including IQ testing, testimony from a medical expert, new findings at step three, and new findings at step four and five if necessary.  *Id.*  As discussed *supra*, the ALJ failed to fully develop the record; thus, the ALJ needs to order IQ testing on remand.  The ALJ also failed to address whether Plaintiff met the introductory language of Listing 12.05, which should be remedied on remand.  It is for the ALJ to determine if additional testimony is required from a medical expert. Further proceedings are necessary for the ALJ to determine in the first instance whether Plaintiff is disabled at step three.  The ALJ may also need to reconsider

Plaintiff's RFC, whether she can perform past relevant work, and whether she is capable of performing other work in the national economy.

## CONCLUSION

Based on the above stated reasons and the relevant record, the Court finds the ALJ committed harmful error by failing to develop the record concerning Plaintiff's IQ scores, and otherwise failing to properly evaluate whether Plaintiff met or equaled the requirements of Listing 12.05.

**IT IS RECOMMENDED:**

1. Plaintiff's motion for summary judgment (ECF No. 17) be **GRANTED**, and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment (ECF No. 19) be **DENIED.**

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED this 31st day of March, 2017.

<i>s/Mary K. Dimke</i><br>MARY K. DIMKE<br>UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18